Go ahead. Good morning, Your Honor. Thank you for hearing my client's case. Ms. Peterson has a concurrent claim for Social Security Disability, that is based on her work record, of course, as well as SSI. We're here because we have a highly cursory district court decision that affirmed the final agency decision. And so turning attention to the final agency decision in the arguments that we made, we want to focus on the residual functional capacity, of course, following step three, and the decision on the part of the agency here to discount heavily the treating physician, Dr. Borman. In the course of doing so, the decision also discounted the agency's own consultative examiner. So in our contentions, we had, of course, the major one, the residual functional capacity, and the discounting of the treating physician, the credibility assessment, which is going to be related to that, because both of those focus heavily on the activities of daily living that were relied on in the agency decision as... When the activities of daily living themselves are not supported by substantial evidence, the residual functional capacity is not supported by substantial evidence either. We'll see, if we focus on that, which was the great focus here by the agency, the greatest activities that were cited and relied on by the agency against Ms. Peterson had to do with activities that she spoke of, which were with Dr. Zuhlsdorf. Dr. Zuhlsdorf is the agency's expert. He opined to disabling impairments. He opined that Ms. Peterson now, because of the reasons, the extensive reasons in the detailed narrative that you see, is not ready for employment now. And he goes into great detail why. Dr. Zuhlsdorf heard and narrated in his report the activities of daily living that the agency now relies on, but the agency discounted him too, but relied on his reports of the activities of daily living. That's inconsistent. He's their expert. He assessed what meaning should attach to those activities of daily living, and he did not regard them as impairing his assessment that she would be better off. Put aside the agency's expert opinion for a second. Let's just assume, I don't think there's any contest that those activities that he recounts are ones that your client told him she could do. Sure. As I understand it, the ALJ discounts the treating physician, Dr. Borman's opinion, because of these facts. But he does so fairly cursorily. I agree. Could he have done so? I mean, are we here because of a procedural claim, which is to say that the ALJ didn't sufficiently justify his rejection of the treating physician's claim, that we ought to send it back to him to say, if you're going to reject it, you need to do better than this? Or are you contending that he couldn't possibly have rejected it, given the evidence in this case? Both, because if this court does not find, as we argue, that she should be found disabled based on Dr. Borman's opinion and Dr. Zulsdorf's opinion, then you should at least find that, as you were just saying, that there's an articulation error here. I know you'd much rather, of course, have the broader remedy, but I guess my question is, isn't it possible on this record that an ALJ could look at it and say, you know, I didn't do a good job last time, so let me focus on a particular activity and describe why that gives me an RFC different than the one I came up with before. And if that's what you decide to do, that is, you conclude after reviewing all of this and the briefs here that you want to find more an articulation error here, rather than that she should be found disabled based on Dr. Borman's opinion and Dr. Zulsdorf's, then it should be made clear to the agency that if it is going to discount Dr. Borman and Dr. Zulsdorf, for that matter, it needs to go into more detail. And it may be unable to. It may be that when it goes back, the ALJ would say, well, now that I see that, I can't do it. He may not be able to cite enough information, because here he says with respect to Dr. Borman, it's given little weight, it's not consistent with the objective medical evidence and the claimant's activities. Her objective medical evidence certainly sufficed for her opinion that we see in the record, and she relied on Dr. Felsch, to whom she referred Ms. Peterson for a neurological consult and an extensive report from him. Later on, on that same page, I'm on Excerpt 93, with respect to Dr. Zulsdorf, he similarly, cursorily discounts Dr. Zulsdorf as well, citing also the claimant's activities. But it's from Dr. Zulsdorf that we learn about the activities, and he's the one who assessed them psychologically and gave a comprehensive report to give some sort of context, what do you make of these activities? Well, Dr. Zulsdorf did not find that those activities precluded her finding of disability or his recommendation that she is not now ready for employment. And he goes into extensive detail as to why she is not, based on her history, she's been untreated for years, a lot of her symptomology has simply not been addressed, partly because I'm sure she didn't know that she was impaired to the extent that he found. But, and then the additional reason that was used, with respect to Dr. Borman, is that it was noted that Dr. Thompson encouraged the claimant to exercise. Well, that doesn't rise to the level of specific and legitimate, he encouraged her to exercise, there's some dispute as to how much she did exercise. Was she walking a mile, or was she able only to walk a block? It's unclear from this. Dr. Zulsdorf was a psychiatrist. He's a psychologist, not a psychiatrist. He's used very often in Alaska for these types of things. That's fine. But you're citing him for the proposition that he described the physical activities, and then opined that she was not currently fit for employment. But his focus was on her mental impairments, isn't that correct? That's correct. And you have not challenged the ALJ's finding with respect to those aspects. You're just saying that to the extent he looked at her daily activities, then she wasn't ready for employment. I'm trying to figure out, did you challenge the discounting of Zulsdorf with respect to his findings with regard to mental impairment? There was no challenge directly with respect to Dr. Zulsdorf. The challenge was that the finding of the activities of daily living and their importance is undermined by Dr. Zulsdorf's report and assessment. And what I'm saying is that ties into the invalidity of discounting Dr. Borman as well, because when the agency relies on claimant's activities as a basis for discounting with respect to Dr. Borman, the activities they're referring to are the ones reported by Dr. Zulsdorf. That's part of this whole record. But let's go back. You indicated that Dr. Zulsdorf's opinion was that she was not ready for employment. He said so. Are you challenging the agency for not adopting that opinion in this case? I don't see you as doing that, are you? That's part of the lack of substantial evidence. But he's not opining as a physical matter. Oh, he did not. Absolutely not. So your claim is that the agency erred in discounting Dr. Borman's opinion that as a physical matter, she couldn't perform certain functions. True, because the reason... Because the agency relied on the statements given to Dr. Zulsdorf. But I'm still having the difficulty Judge Fischer's having. Here's the reason. Dr. Zulsdorf's only opinion is psychological, is it not? True, but the reason that he discounted Dr. Borman is that, first one, is not consistent with the objective medical evidence. The objective medical evidence includes the mental, all of it. It's by definition, the mental evidence, as well as the physical, is part of what is regarded as the objective medical evidence. It's his entire record here. And we're saying it is consistent with that. Okay. I'd like to... Well, I don't have much time left. I'll give you a minute for rebuttal. Let's hear from the government. Good morning, Your Honors. May it please the court, my name is Ryan Lewin. I represent the Commissioner of Social Security. Ms. Peterson here seeks remand of the Commissioner's final decision based on three grounds, but none of these arguments have merit. Could we just go for a minute? I just want to understand what the ALJ did with respect to Dr. Borman, the treating physician. Yes. So at the end of the ALJ's opinion, he says, the ALJ says, this opinion is given little weight and is not consistent with the objective medical evidence and the claimant's activities. That's all he says. That is correct. And the ALJ did not specifically... You offer a lot of good reasons. I mean, you offer some reasons to help the ALJ, but there aren't the reasons given by the ALJ. And you're absolutely correct, Your Honor. So what do we do with that? Well, the Review and Court... We're supposed to look at what the ALJ did, not for the post-decision justifications that you can mount for him. Well, we don't believe it's a post hoc argument here because the ALJ did discuss in detail all the medical evidence that contradicted Dr. Borman's opinion. But isn't he required, under our case law at least, when dealing with the opinion of a treating physician, to be more specific about why he rejects that opinion? We have somebody who's treated this woman over a period of time. His conclusion is that she... his opinion is that she's not able to work. And the ALJ says, I reject it because it's not consistent with the medical evidence. And you do a fine job, and the commissioner does almost as good a job, but not as good as you. I'm saying, well, here's what he should have said, but he didn't. And isn't that... that's our... that's my... I think it's... Same question to two different ways. Isn't that a procedural deficiency in this case? We don't believe it's a procedural deficiency. The Review and Court under circuit case law is allowed to draw inferences from the ALJ's decision. And as already briefed, the ALJ here discussed a lot of medical evidence. We're talking about objective evidence that included really benign MRI findings. The ALJ cited a... What in the record could he have been referring to when he says it's inconsistent or not supported with the objective medical evidence? And then why he... or why he found something to undermine her credibility, like her daily activity of walking. Dr. Borman said... didn't say anything to suggest she couldn't walk. What she said was, as I recall and understand, is that she couldn't sustain all that activity, and that she would wind up missing, what, four days of work a month. The VE, when given that hypothetical on cross-examination, agreed that she wouldn't... if Dr. Borman's assessment was credited, would not be employable. So how are we supposed to extract from the record what particulars the ALJ had in mind? Well, I think it's a reasonable inference that this court can make when the ALJ pointed to neurological findings that included... Well, talk about those. Neurological findings, with respect to MRIs at least, we've seen a bunch of fibromyalgia cases, and generally the MRI is not diagnostic of fibromyalgia. So if the ALJ had said, I reject Dr. Borman's position because the MRI didn't show fibromyalgia, that'd be a pretty easy case to review, because we would say... the other side would put on an expert and say, well, it normally doesn't show it. We don't know on what basis. As you say, there's lots of stuff in the record that's not indicative of disability, but we don't know on what basis the ALJ rejected Dr. Borman's contrary opinion. Right. And as a first point, I would like to say that fibromyalgia is not an issue in this case, because the ALJ found at step two that it was not a severe medical impairment, and this is an issue that Ms. Peterson has not challenged on appeal, or even at the district court. You're invoking Dr. Fulch, and Dr. Fulch, to which the ALJ afforded significant weight, said she had chronic neck and back pain due to a combination of factors including fibromyalgia. So he credits Fulch, and he seems to bring fibromyalgia into the totality, and you're saying, well, we should look at the entire record, but let's look at the one he did cite, and he brings fibromyalgia into the picture. That is correct, but the... Thank you. Dr. Fulch... We won't be suited in ITD for making up things. Dr. Fulch made that statement, but these were based on Ms. Peterson's subjective complaints. In fact, Dr. Fulch does not make any of the requisite findings for a diagnosis of fibromyalgia. But I'm saying the ALJ credited him and gave it substantial weight. You just gave another argument, you know, in support. Well... The ALJ didn't say that. That is correct. We're doing fine up here. And as are you. We've got to get the ALJ here. The issue here is whether or not the ALJ's RFC finding is supported by substantial evidence. Ms. Peterson is arguing that because Dr. Borman, because the ALJ rejected Dr. Borman's medical opinion, that the RFC finding is no longer supported by any evidence. And that's why I asked your opponent to sort of separate his arguments. We've been focusing on the procedural one. I think, to anticipate where you're going, that there is evidence from which an ALJ might have articulated a decision coming up with this RFC that perhaps we don't know. Well, we just don't know why. So it's the procedural side I'm most concerned with, not whether or not there's sufficient evidence from the record from which a decision could have been different. Let me just follow up on that point. Why should the agency get another shot? If we don't think that this is an adequate explanation. Why should they get another shot to come back, you know, to redo it and find a basis to deny? Well, we don't think the agency necessarily needs a second shot. We think the RFC is supported by substantial evidence. Well, what if we think this isn't sufficient? Assume that for a moment. Why does the agency get another shot, a redo? Because we do have several inconsistencies in the record here. We have Ms. Peterson alleging the signaling pain. She alleges she can't work. But we have a neurologist who conducted a thorough physical exam. He found intact motor strength at greater than 5.5. He found normal gait. And he found, really, it was a, quote, intact sensory examination. Who is that? This is Dr. Folch. And this is found at 4.73. And given all these inconsistencies, the proper thing to do is to have another administrative hearing to sort these conflicts out. Well, counsel asked, I mean, the brief asked for a remand, if we agree with his position, asked for a remand for a new hearing. But in my own mind, if you credit Dr. Borman, she's entitled to benefits. Well, you, under the credit as true doctrine, you also have to look at whether or not the entire record actually raises any questions about whether or not Ms. Peterson is actually disabled. And in this case, we don't think that is possible, because, again, as already briefed, we have objective medical evidence. If you credit Dr. Borman, what's left? We have Dr. Borman, as Judge Fischer pointed out, the VE's testimony. Well, we have, again, we have other substantial evidence. We have the daily activities that Ms. Peterson herself... How are those inconsistent with Dr. Borman? Well, Dr. Borman, I believe, Dr. Borman, in his medical opinion, stated that Ms. Peterson could only stand for 15 to 20... Borman, I think, is a woman. Yes, that's Dr. Borman. Teresa. And she mentioned that Ms. Peterson could only stand 15 to 20 minutes at a time. But we also have, Dr. Fulcher reported normal gait and steady station. And these are simply... Are they inconsistent? That's one of my difficulties in this case. It may well be that normal gait and steady station is not consistent with being unable to walk more than 15 minutes. But how do I know that? Well, I think that's a... The RFC is an administrative finding. And the ALJ, in this case, looked at the entire record. And he is supposed to consider medical evidence as well as medical opinions and assess the RFC. But is there a medical opinion that says she can walk more than 15 minutes at a time? Or is it just that we're supposed to infer from steady gait that she can? I think it's a reasonable inference that having normal gait and intact sensation and really intact muscle strength... Just to come back to what you said about Borman. I thought she opined that she could stand or walk for less than two hours in an eight-hour day. So if she were able to walk a mile, that wouldn't be inconsistent, would it? I suppose that would depend on how... Her walking rate. It's unclear to me whether or not that would be inconsistent. She had normal gait, so she could do it. But she couldn't do it for more than two hours. I am not sure. That's not an issue I have thought about, Your Honor. Well, apparently the ALJ did because you're relying on folks. But to the extent... That's the problem I have. It's not as if, by the way, this is all new law. We've always said, for at least encompassing this time period, that when you reject a treating physician, which is the one who's most familiar in person in all of that, you have to give specific reasons to explain. You just can't say, well, it's inconsistent with objective medical evidence without saying which... with what. Or that I... Her inconsistency in daily living. Well, how is it inconsistent? That's what's frustrating about this. The ALJ went through a lot of trouble to summarize all this medical evidence. Well, that's great. But then the burden on the ALJ is to say, okay, and this is what I distill from it, and this is the specifics that I'm talking about. So that's why I wonder along with Judge Paez, why do you get a redo? Again, I think because there are so many inconsistencies in the record. Okay. Okay, we got it. And we ask the court to remit for... excuse me, to affirm the commissioner's statement. Thank you. Thank you, counsel. You can have a minute for rebuttal. Thank you, Your Honor, for the opportunity to rebut. The first question, what do we do with that? And the commissioner said that this is not post-hoc rationalization. It is. Unless the commissioner can show that the explanations that he offered in the commissioner's brief fit within footnote three of where are we versus the commissioner, W-A-R-R-E versus the commissioner, footnote three speaks about whether where there is not post-hoc rationalization, where there is simply an expansion on a reason given. The reasons were not given here. That is the problem here. And as to the preclusive nature, work preclusive nature of the limitations, at record 499, we were just speaking about it a minute ago with Mr. Liu, these functional limitations applied by Dr. Borman are work preclusive at transcript or excerpt 499 in terms of the inability to walk for a certain distance and the need to take so many breaks and so forth. There was also the question about why should the agency get another shot? It should not here because Dr. Borman's opinion is work preclusive. Dr. Zuhlsdorf's opinion is work preclusive. If you look at the objective medical evidence in this case, Dr. Borman and Dr. Zuhlsdorf together, she is disabled and she should be found so. Thank you very much. Thank you. You okay? I'll get the next case. Okay. All right. So thank you, counsel, very much. We appreciate your arguments. Matter submitted.
judges: Fisher, Paez, Hurwitz